Christopher W. LEGG, etc., Plaintiff,

v.

SPIRIT AIRLINES, INC., etc., Defendant.

CASE NO. 14-61978-CIV-COHN/SELTZER

United States District Court,
S.D. Florida.

Signed June 10, 2015

---

Michael Hilicki, Keogh Law Ltd., Chicago, IL, Patrick Christopher Crotty, The Law Office of Scott D. Owens, Scott David Owens, Scott D. Owens, P.A., Hollywood, FL, for Plaintiff.

Christopher Stephen Carver, Akerman Senterfitt, Miami, FL, Jason Samuel Oletsky,

Akerman Senterfitt, Ft. Lauderdale, FL, Kasey F. Dunlap, Scott A. Meyers, Shawn Taylor, Akerman, LLP, Chicago, IL, Michael O. Mena, Valerie B. Greenberg, Ari Gerstin, Akerman LLP, Miami, FL, Robin L. Cohen, Law Firm of Kasowitz, Benson, Torres & Friedman LLP, New York, NY, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

JAMES I. COHN, United States District Judge

**THIS CAUSE** is before the Court upon Plaintiff's Amended Motion for Class Certification [DE 29] ("Motion"). The Court has considered the Motion, Defendant's Response [DE 36], and Plaintiff's Reply [DE 39], the record in this case, and is otherwise advised in the premises. The Court will **GRANT** the motion and appoint Plaintiff's counsel to represent the class.

### I. Background

Plaintiff Christopher W. Legg sues Defendant Spirit Airlines, Inc., for violating the Fair and Accurate Credit Transactions Act ("FACTA"), an amendment to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq. Specifically, Legg alleges that Spirit violated FACTA's so-called "truncation requirement," at Section 1681c(g)(1). The truncation requirement provides as follows:

(g) Truncation of credit card and debit card numbers

(1) In general. Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

According to the Complaint, Legg used a credit card to pay a baggage fee at Spirit's automated kiosk at Fort Lauderdale-Hollywood International Airport on August 28, 2014. [DE 1 at 6–7.] The receipt that the kiosk provided "displayed the last four digits of his credit card as well as the first seven digits of his account number." [Id. at 7 (emphasis supplied).] Legg alleges that Spirit's kiosks were programed to include this information since at least 2009. [Id. at 7–8.] According to the motion papers, Spirit may have produced as many as 467,225 offending receipts during this time. [DE 36 at 1.]

Legg also claims that Spirit knew about FACTA's truncation requirement, and willfully violated its terms. [DE 1 at 13.] Legg observes that Spirit previously defended a law suit involving the same conduct in 2010. [Id. at 7.] Further, credit card companies widely publicized FACTA's requirements to their participating retailers before they took effect. [Id. at 3–4.] These companies incorporated FACTA's truncation requirement into their own policies. [Id.]

Legg now asks the Court to certify the following class:

All individuals in the U.S. who: (i) made a payment to Spirit Airlines (ii) using a debit or credit card, and (iii) for which Spirit printed a point of sale receipt (iv) that displayed more than the last 5 digits of the card number (v) after August 29, 2012.

[DE 29 at 7.] Spirit opposes the Motion. [DE 36.]

### II. Class Certification Standard

Federal Rule of Civil Procedure 23 guides the Court in deciding whether class certification is appropriate. Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1187 (11th Cir.2003). "Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'" Little v. T–Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir.2012) (quoting De-Bremaecker v. Short, 433 F.2d 733, 734 (5th Cir.1970)). "After a court determines that a class is ascertainable, it then considers whether the Rule 23 factors are met." Bush v. Calloway Consolidated Group River City, Inc., No. 3:10–cv–841–J–37MCR, 2012 WL 1016871, at *3 (M.D.Fla. Mar. 26, 2012).

Rule 23 provides in pertinent part the following:

**(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

    (1) the class is so numerous that joinder of all members in impracticable;

    (2) there are questions of law or fact common to the class;

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if : ...

    (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

A plaintiff may maintain a suit as a class action only if all prerequisites of Rule 23(a) are satisfied and, in addition, the requirements of one of the three subsections of Rule 23(b) are also met. Heaven v. Trust Co. Bank, 118 F.3d 735, 737 (11th Cir.1997); see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

■■■■ A Court has broad discretion in deciding whether to certify a class. Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569 (11th Cir.1992). Although a district court is not to determine the merits of a case at the certification stage, sometimes "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Id. at 1570 n. 11. The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action. Heaven, 118 F.3d at 737.

### III. Application

The Court will grant Plaintiff's Motion for class certification. Plaintiff's proposed class is ascertainable and has satisfied Rule 23's re-

quirements. Further, Legg and his attorneys have shown themselves to be adequate representatives of the absent class members. The Court will therefore also appoint Legg and his attorneys as class representative and class counsel.

Spirit challenges Plaintiff's Motion on certain discrete grounds. Spirit argues that a class action does not present a superior method of resolving plaintiffs' claims because the potential statutory damages award would violate Spirit's due process rights, and FACTA's fee-shifting provisions adequately incentivize individual actions. Spirit also argues that Plaintiff fails to satisfy Rule 23's predominance, commonality, and typicality requirements.

### A. Definition and Ascertainability

■■■■ Plaintiff's proposed class appears adequately defined and eminently ascertainable. Plaintiff satisfies these requirements if he proposes a class that "can be ascertained by reference to objective criteria" and whose members can be identified through "a manageable process that does not require much, if any, individual inquiry." Bussey v. Macon Cnty. Greyhound Park, Inc., 562 Fed.Appx. 782, 787 (11th Cir.2014).

Here, Plaintiff proposes a class that includes persons who (1) paid Spirit; (2) with a credit or debit card; (3) in the United States; (4) who received a receipt; that (5) displayed more than the last five digits of their card number; (6) after August 29, 2012. [DE 29 at 7.] Spirit's responses to Legg's discovery requests indicate that its records will identify those to whom Spirit issued the offending receipts. [See DE 29-1 at 14–15.] Legg's proposed class is therefore well-defined through reference to objective criteria, and its members may be identified through a manageable process. Legg satisfies class certification's threshold requirements of definition and ascertainability.

### B. Numerosity

■■■ The Court next turns to Rule 23(a)(1)'s requirement that a proposed class be "so numerous that joinder of all members is impracticable." Parties seeking class certification do not need to know the "precise number of class members," but they "must

make reasonable estimates with support as to the size of the proposed class." Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697, 699 (M.D.Fla.2000). The Eleventh Circuit has held that "generally less than twenty-one is inadequate [for class certification], more than forty adequate." Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir.1986) (internal quotation marks omitted).

■ Spirit does not contest that Legg's proposed class satisfies the numerosity requirement. Indeed, Spirit's discovery responses acknowledge that the potential class contains over 100,000 members. [DE 29-1 at 9.] The Motion therefore satisfies Rule 23's numerosity requirement.

### C. Commonality

■ Rule 23(a)(2)'s commonality requirement demands "questions of law or fact common to the class." It is a "relatively light burden" that "does not require that all the questions of law and fact raised by the dispute be common ... or that the common questions of law or fact predominate over individual issues." Vega v. T–Mobile USA, Inc., 564 F.3d 1256, 1268 (11th Cir.2009) (internal quotation marks omitted). Rather, it requires only "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1355 (11th Cir.2009) (internal quotation marks omitted).

■ The proposed class's claims share multiple questions of law and fact. The motion papers state that all of Spirit's alleged FACTA violations stem from a computer programing error common to all of Spirit's automated kiosks. Spirit disclaims liability for willful violation of the statute on the grounds that the programing error was a third party's fault, not its own. Common questions of law and fact include (1) the nature and provenance of the programing error; (2) when Spirit became aware of the programming error; (3) Spirit's and any third party's respective culpability for the programing error; and (4) the legal effect of this culpability.

Spirit contends that Legg's suit does not satisfy Rule 23's commonality requirement because Plaintiff has not suffered actual damages as a result of Spirit's conduct, and other class members may have. [DE 36 at 16.] This argument is more appropriately addressed to Rule 23's adequacy and predominance requirements. See Preston v. Mortgage Guarantee Ins. Co. of Milwaukee, No. 5:03-111-Oc-10GRJ (M.D. Fla. June 22, 2004). The Court will therefore revisit it in those contexts. That class members other than Legg may have suffered actual damages does not undermine the Court's conclusion that this case presents many issues "whose resolution will affect all or a significant number of the putative class members." Williams, 568 F.3d at 1355. Commonality is therefore satisfied.

### D. Typicality

■ Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A court examining the typicality requirement should determine whether a "sufficient nexus exists between the claims of the named representatives and those of the class at large." Vega v. T–Mobile USA, Inc., 564 F.3d 1256, 1275 (11th Cir.2009) (internal quotation marks omitted). A named plaintiff's claims are "typical" when they arise from the same "event or pattern or practice and are based on the same legal theory" as the claims of the remainder of the class. Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir.1984). Typicality is generally satisfied when the named representatives, in proving the elements of their claims, would also establish the elements of the class members' claims. Manno v. Healthcare Revenue Recovery Group, LLC., 289 F.R.D. 674, 686 (S.D.Fla.2013).

■ Here, Legg's claims are typical of those of the proposed class. Legg's and the class members' claims both arise from Spirit's practice of inadequately truncating customers' credit and debit card numbers on those customers' receipts. Spirit's Response acknowledges that its kiosks included this improper information due to a system-wide programing error that affected Legg and all

members of the proposed class. [DE 36 at 4.] This is sufficient. See Kornberg, 741 F.2d at 1337.

Again Spirit argues that Plaintiff does not satisfy Rule 23's typicality requirement because Plaintiff suffered no actual damages. [See DE 36 at 15–16.] Pursuant to Spirit's own supporting case law, however, this objection is more appropriately directed to Rule 23's adequacy and predominance requirements. See Preston, No. 5:03-cv-111-Oc-10GRJ (M.D. Fla. June 22, 2004). "Difference[ ] in the amount of damages between the class representative and other class members does not affect typicality." Kornberg, 741 F.2d at 1337.

### E. Adequacy of Representation

■■■■ Under Rule 23(a)(4), the Court must satisfy itself that "the representative parties will fairly and adequately protect the interests of the class." This requirement applies to both the named plaintiff and his counsel. London v. Wal–Mart Stores, Inc., 340 F.3d 1246, 1253 (11th Cir.2003). The purpose of the adequacy requirement is to protect the legal rights of the unnamed class members. Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir.1987). "This 'adequacy of representation' analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir.2003).

■■■ The Court has no cause for concern with respect to either of these issues. Plaintiff's attorneys are experienced and capable, and have served as class counsel in similar consumer class actions before. [DE 29-3 at 1–7.] Plaintiff himself has filed an affidavit attesting to his understanding of his obligations as class representative. [DE 29-2.] As Defendant observes, Legg is also no stranger to class litigation. [DE 36 at 3.]

Spirit argues that Legg cannot adequately represent the class due to a conflict of interest. Specifically, Spirit worries that a class action for only statutory damages might inappropriately preclude the claims of those class members with larger actual damages. In support, Plaintiff cites to an unpublished case from the Middle District of Florida, Preston v. Mortgage Guarantee Ins. Co. of Milwaukee, No. 5:03-111-Oc-10GRJ (M.D. Fla. June 22, 2004). In denying class certification of a Fair Credit Reporting Act claim on conflict concerns, the Court reasoned that "[t]o the extent that the Plaintiffs seek statutory damages, to the exclusion of actual damages, the Plaintiffs' interests conflict with those putative class members who have suffered actual damages in excess of the statutory damages cap." Id. at 8. Further, "[i]f the Plaintiffs were to seek the most financially advantageous damages for each putative class member—whether that would be in actual or statutory damages—then predominance issues would render a class action inappropriate." Id.

But this Court is persuaded by the Northern District of Alabama's decision in Braxton v. Farmer's Ins. Group, 209 F.R.D. 654 (2002). The Braxton Court also considered a motion for class certification in an FCRA case in which 'it might be in the best interest of some class members to pursue actual damages, rather than the [FCRA's] statutory damages." Id. at 660. The Braxton Court observed that "this alleged conflict can be eliminated" through Rule 23(c)(2)(B)'s notice and opt-out requirements. Assuming an appropriately worded class notice, any potential class members who believe they would be better off pursuing actual damages may simply opt out of this suit. Thus, "there is no real conflict of interest here." Id.

Accordingly, Plaintiff and his counsel have established that they are adequate representatives of the class.

### F. Predominance

■■■ Before a district court can certify a class pursuant to Rule 23(b)(3), the plaintiff must demonstrate that common issues predominate over individualized issues. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc., 521 U.S. at 623, 117 S.Ct. 2231. To satisfy the predominance requirement, " 'the issues in the class action that are sub-

ject to generalized proof and, thus, applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.' " Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir.1997) (quoting Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir.1989)). The predominance requirement focuses on legal and factual inquiries that qualify each member's claim as a controversy, and it is "far more demanding" than the commonality requirement. Id.

■■■ Common issues can predominate only if they have a "direct impact on every class member's effort to establish liability that is more substantial than the impact of individual issues in resolving the claim or claims of each class member." Vega, 564 F.3d at 1270 (internal quotation marks omitted). Indeed, if plaintiffs must introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their claim, the action is not suitable for class certification under Rule 23(b)(3). See Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir.2004).

■■■ Here, Plaintiff argues that he satisfies Rule 23(b)(3)'s predominance requirement because all the putative class members' claims stem from the same programing error that affected all of Spirit's ticket kiosks. Spirit's foreshadowed defense—that someone else caused the programing error—also applies uniformly to the class members. The court agrees that these central issues predominate over any that would require individual determination.

In its Response, Spirit makes two significant counterarguments. Spirit first argues that the class members' actual damages are central to the case and are not amenable to class-wide determination. But this is not a concern because Plaintiff seeks only statutory damages. Second, Spirit argues that not every purchaser who used the offending kiosks qualifies as a consumer to whom FACTA applies. According to the Response, "approximately 13% of Spirit's passengers use a corporate credit card to purchase tickets and make other purchases with Spirit Airlines." [DE 36 at 15.]

The Court is likewise not persuaded that this concern over the use of business credit cards defeats class certification. The issue of whether FACTA applies to corporate credit cards appears unsettled. The Court will not address this conflicting authority concerning the merits of some of Plaintiff's claims upon a motion for class certification. Moreover, should FACTA not apply to purchases with business accounts, the class may be narrowed. See Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); See also Culpepper v. Irwin Mortg. Corp., 491 F.3d 1260, 1275 (11th Cir.2007) ("[A] district court may alter or amend its certification order at any time before rendering a decision on the merits.").

Plaintiff has satisfied Rule 23(b)(3)'s predominance requirement.

### G. Superiority

Defendant makes its strongest objections to class certification under Rule 23(b)'s superiority requirement. Per Rule 23(b)(3), a Plaintiff may maintain a class action only if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In conducting this analysis, the Court should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Rule 23(b)(3); see also Vega v. T–Mobile USA, Inc., 564 F.3d 1256, 1277–78 (11th Cir.2009).

■■■ Here, none of these enumerated considerations militate in favor of denying class certification. To the extent that potential class plaintiffs have a special interest in prosecuting their claims independently, they may opt out of the suit. The Court is unaware of any parallel litigation concerning Plaintiffs' claims. Neither party suggests that concentrating the potential class members' claims in this Court would be problematic, and the Court discerns no reason that it would be.

And managing the proposed class action would not present significant difficulties. As observed above, the proposed class member's common issues predominate in this suit, and the efficiency to be gained by the class-wide determination of these common issues far outweighs the difficulty in managing any individualized inquiries that may be necessary.

Instead, Defendant attacks the superiority of class certification on non-enumerated grounds. Defendant argues that certifying this case as a class action would expose it to an unconstitutional statutory damages award in violation of its due process rights. [DE 36 at 7–13.] Further, Defendant argues that class plaintiffs can adequately pursue their small individual claims because the FCRA allows successful plaintiffs to recover attorneys' fees.

The Court agrees with Plaintiff that Defendant's due process concerns are premature. Defendant argues that, assuming the Court finds that Defendant willfully violated FACTA with respect to 467,225 transactions,[1] FACTA calls for a "possibly annihilating" statutory damages award of between $46 and $460 million. There is some support for Defendant's argument that the potential for an outsized damages award should be considered at the class certification stage. In Leysoto v. Mama Mia I, Inc., Judge Patricia Seitz of this Court, in a matter of first impression, declined to certify a FACTA class that exposed a restaurant with a $40,000 net worth to a damages award between $4.6 and $46 million even in the absence of any actual harm. 255 F.R.D. 693, 698 (S.D.Fla.2009); see also Ehren v. Moon, Inc., No. 09–21222–CIV, 2010 WL 5014712, at *2 (S.D.Fla. Dec. 3, 2010) (declining to certify a class upon default judgment in a FACTA case where such certification would impose "annihilative damages").

However, Judge Seitz has since limited Leysoto's holding to cases in which "class action could serve no compensatory function for the class" due to the limited worth of the defendant. See Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC, No. 12–

22330–CIV, 2014 WL 7366255, at *10 (S.D.Fla. Dec. 24, 2014). Moreover, the Eleventh Circuit dicta upon which Leysoto relied has since been called into question. In Harris v. Mexican Specialty Foods, Inc., the Eleventh Circuit reversed a district court's grant of summary judgment in favor of defendants in a FACTA case on the grounds that FACTA's damages scheme was unconstitutionally excessive as applied. 564 F.3d 1301, 1309 (11th Cir.2009). The Harris Court observed that "[t]ypically, excessiveness review occurs after a jury has delivered a damages award." Id. Further, the district court "lacked jurisdiction to consider whether the FCRA's statutory-damages provision is punitive and will yield an unconstitutionally excessive verdict" at the summary judgment stage, before class certification and the entry of that verdict.

Defendant's argument also fails for lack of evidence. The Court cannot credit Defendant's argument that this suit presents the potential for "annihilating damages" because Defendant has provided no evidence concerning its ability to pay the feared statutory damages award. As Judge Seitz observed in Physicians Healthsource, "the current record does not allow for definitive assessments of Defendants' ability to pay a judgment or settlement" and the Court therefore cannot make an informed judgment concerning the disproportionality of the contemplated damages award. 2014 WL 7366255, at *10.

Finally, the Court notes that FACTA's fee-shifting rules weigh against granting class certification. But this is not enough to overcome efficiency advantages that a class action presents. The Court will not preside over hundreds of thousands of separate cases when one will do. Plaintiff has satisfied Rule 23(b)(3)'s superiority requirement.

### IV. The Certified Class

The Court certifies the following class, which alters Plaintiff's proposed class definition to ensure compliance with 28 U.S.C. § 455:

who actually received a receipt during the applicable time period is significantly lower than this number." [DE 36 at 1 n.1.]

---

1. Although Defendant bases its Superiority argument on this figure, elsewhere Defendant states that it "believes that the number of individuals

All individuals in the United States who: (i) made a payment to Spirit Airlines (ii) using a debit or credit card, and (iii) for which Spirit printed a point of sale receipt (iv) that displayed more than the last 5 digits of the card number (v) after August 29, 2012.

Notwithstanding the foregoing, in compliance with 28 U.S.C. § 455, this class specifically excludes persons in the following categories:

(A) The district judge and magistrate judge presiding over this case and the judges of the United States Court of Appeals for the Eleventh Circuit;

(B) the spouses of those in category (A);

(C) any person within the third degree of relationship of those in categories (A) or (B); and

(D) the spouses of those within category (C).

## V. Conclusion

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Amended Motion for Class Certification [DE 29] is **GRANTED** as set forth above.

a. The Court appoints Christopher W. Legg as representative of the Rule 23(b)(3) class.

b. Pursuant to Rule 23(g), the Court appoints Scott D. Owens and Michael S. Hilicki as class counsel.

c. Pursuant to Rule 23(c), Plaintiffs shall provide reasonable and adequate notice to the Class Members at Plaintiffs' expense. Plaintiffs should move for court approval of a proposed class notice and opt-out request form after consultation with Defendant and not later than August 8, 2015.

2. Trial and Pretrial Schedule is reset as follows:

Calendar call in this case is reset for 9:00 a.m. on **January 7, 2016**, with trial to commence in the two-week trial period beginning **January 11, 2016**.

**DONED AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 10th day of June, 2015.